UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| KENT SIMILIEN,<br><br>Plaintiff,<br><br>v.<br><br>SCHNEIDER NAT'L CARRIERS, INC.,<br><br>Defendant. | CAUSE NO. 2:25-cv-544 |

OPINION AND ORDER

Kent Similien, proceeding *pro se*, filed a complaint claiming that his former employer, Schneider National Carriers, Inc. ("Schneider"), discriminated against him on the basis of his race and sex. [DE 1; DE 7 (Am. Compl.).] Schneider moved to dismiss the sex discrimination claim as untimely and the race discrimination claim for failing to state a claim. [DE 46.] For reasons outlined below, the motion to dismiss will be granted in part and denied in part, and Similien will be given the opportunity to amend his complaint as to the race discrimination claim. [DE 46.]

**Background**

Kent Similien, a Black man, started working for Schneider as a commercial driver in February 2022. [DE 7, 4.] In early June 2022, after he completed Schneider's training in Coraopolis, Pennsylvania, he was assigned to Schneider's terminal in Gary, Indiana. *Id.* Over the next few months, Schneider logged over a dozen "critical events" related to Similien's driving, which Similien attached to his complaint. [*Id.*; DE 7-1, 45-58.] These

critical events are almost all related to Similien driving too fast for the road conditions and failing to maintain his vehicle's stability. *Id.*

Around the night of March 9 and the morning of March 10, 2023, Similien alleges he was required to drive despite inclement weather. [DE 7, 5.] At approximately 1:15 A.M. on March 10, 2023, while driving on I-94 in Chicago, Similien's truck lost traction due to ice on the road, causing it to jackknife and strike the shoulder of the highway. [DE 7, 5; DE 7-1, 35-36.] Similien suffered a head injury and a concussion in the crash. [DE 7, 5.] Illinois State Police responded to the crash and did not issue a citation. *Id.* Similien reported the crash to Scheider's dispatch, and he was instructed to drive the truck back to the terminal in Gary, Indiana. *Id.* at 6.

Upon arriving back at the terminal, Similien's supervisor, Roger Williams, instructed Similien to rest briefly, and then instructed him to attend a safety meeting via Zoom. *Id.* During that meeting, Williams, Similien's other supervisor Robert Burns, and two other Schneider safety team members questioned Similien about the crash. *Id.* A few hours later, Similien was terminated. He states that he was not given a reason for his termination. *Id.*

Similien identifies two other Schneider employees in his amended complaint that he alleges had similar incidents but were not fired. The first is Oceanna Marie Warner. Similien describes her as "a Black female, CDL tanker truck driver" who "worked on the same dedicated account" as Plaintiff, "at the Defendant's Gary, Indiana terminal and had the same supervisors." [DE 7, 6.] Similien states that Warner had "had accidents during her employment, received company-sponsored training afterward,

and remained employed." *Id.* The second employee Schneider identifies is Tavara Yvonne Kountz. Similien describes Kountz as "a Black female CDL tanker truck driver" who "was involved in multiple accidents" and who "received company-sponsored training after those accidents" and remained employed. *Id.* at 6-7. Both Warner and Kountz are the same race as Similien.

Similien states "I believe I was treated less favorably than these female co-workers because I am male and Black." *Id.* at 7. Following his termination, Similien filed a discrimination charge with the Wisconsin Department of Workforce Development[1] which was dual-filed with the United States Equal Employment Opportunity Commission ("EEOC") on March 27, 2026. [DE 7-1, 5.] On that complaint, Similien only checked the box for sex discrimination, and did not check the box for, nor otherwise mention, race discrimination. *Id.*

On August 29, 2025, Similien received a notice from the EEOC that his charge was dismissed, and that, if he wishes, he may file a lawsuit against Schneider within 90 days. [DE 7, 1; DE 7-1, 2.] Similien filed his original complaint in this case on December 1, 2025. [DE 1.]

**Legal Standard**

Federal Rule of Civil Procedure 12(b)(6) permits a party to move for dismissal if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To avoid dismissal under Rule 12(b)(6), a claim for relief must be "plausible on

[1] From the pleading exhibits, it appears that Schneider is headquartered and/or incorporated in Wisconsin.

its face." *Proft v. Raoul*, 944 F.3d 686, 690 (7th Cir. 2019) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility requires the plaintiff to plead sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Taha v. Int'l Brotherhood of Teamsters, Local 781*, 947 F.3d 464, 469 (7th Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

A plaintiff must plead facts that "suggest a right to relief that is beyond the speculative level," which requires alleging "enough details about the subject-matter of the case to present a story that holds together." *Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614 (7th Cir. 2019); *Swanson v. Citibank*, N.A., 614 F.3d 400, 404 (7th Cir. 2010). While I must accept the complaint's allegations as true and draw all reasonable inferences in Plaintiffs' favor, see *Bradley Hotel Corp. v. Aspen Specialty Ins. Co.*, 19 F.4th 1002, 1006 (7th Cir. 2021), "sheer speculation, bald assertions, and unsupported conclusory statements" in the complaint fail to meet this burden, *Taha*, 947 F.3d at 469.

## Discussion

As mentioned above, Similien brings claims for both race and sex discrimination. [DE 7.] The race claim is brought under Section 1981 while the sex claim is brought under Title VII. Schneider has moved to dismiss both claims for distinct reasons, and I will discuss each claim separately in turn.

### I. Similien's Title VII Claim

Similien's first claim is that he was discriminated against on the basis of his sex in violation of Title VII of the Civil Rights Act of 1964. A plaintiff alleging a violation of

Title VII must file his action within 90 days of receiving the EEOC's Notice of Right to Sue Letter. 42 U.S.C. § 2000e-5(f)(1). A complaint filed after the 90 days is time-barred and subject to dismissal. *Lax v. Mayorkas*, 20 F.4th 1178, 1182 (7th Cir. 2021) (affirming the district court's dismissal of a complaint alleging Title VII claims when it was filed outside the 90-day window) (citation omitted); *Dandy v. United Parcel Serv., Inc.*, 388 F.3d 263, 270 (7th Cir. 2004). The Seventh Circuit has held that "the filing window begins when a claimant 'actually receives'" the Notice of Right to Sue Letter. *Lax*, 20 F.4th at 1182 (quoting *Jones v. Madison Serv. Corp.*, 744 F.2d 1309, 1312 (7th Cir. 1984)).

Here, Similien filed this lawsuit on December 1, 2025. [DE 1.] As Schneider argues, that is over 90 days from the time he states he received the right to sue notice: August 29, 2026. [DE 7.] In response, Similien points out that exactly 90 days after August 29, 2026 was Thursday, November 27, 2025: Thanksgiving Day. When a deadline falls on a legal holiday, the deadline is extended until the next day that is not a weekend or legal holiday. Fed. R. Civ. P. 6(a)(1). Similien argued that the "next business day was Monday, December 1, 2025." [DE 29.] But it wasn't. The next business day was Friday, November 28, 2025. *See* Fed. R. Civ. P. 6(a)(6) (defining what days qualify as legal holidays under the rule); *see also* Indiana Code § 1-1-9-1 (defining what days qualify as state holidays, which also fall under the rule). The day after Thanksgiving is not a holiday but, in fairness, almost no one is in the courthouse that day and the clerk's office is not staffed. Nevertheless, technically speaking, the complaint was not filed on "the next business day" after the legal holiday.

The 90-day deadline, in general, is strictly enforced in the Seventh Circuit. *Threadgill v. Moore U.S.A., Inc.*, 269 F.3d 848, 850-51 (7th Cir. 2001) (denying employment discrimination claim filed after the 90-day period and noting that "[p]rocedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants.") (quoting *Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 152, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984)). Courts in this circuit sometimes deny claims filed even one day after the deadline. *See Moses v. U.S. Steel Corp.*, 947 F. Supp. 2d 834, 842 (N.D. Ind. 2013) (dismissing discrimination case brought by *pro se* litigant filed one day after the 90-day period closed); *see also Lax*, 20 F.4th at 1182 (affirming Rule 12(b)(6) dismissal where plaintiff filed federal discrimination lawsuit one day after the 90-day period closed).

Similien moved to file a surreply, which Magistrate Judge John Martin granted. [DE 40.] In that fourteen-page surreply, Similien makes a new argument: that he exercised reasonable diligence and that the deadline should be tolled. [DE 41.] Similien mailed the complaint using UPS Next Day Air on November 26, 2025 (the day before Thanksgiving). This is confirmed by the UPS package received by the Court. [DE 1-3.] But it was not received by the Court until December 1, 2025. Because of this, Similien argues that his complaint was rendered late due to events outside of his control.

First, I note that this argument is new, and an argument raised for the first time in a reply, especially a surreply, is generally forfeited. However, because Similien is proceeding *pro se*, I will consider this argument. Second, I note that the filing date is the

date the court receives the complaint, not the date it is put in the mail. *See Robinson v. Dep't of Homeland Sec. Off. of Inspector Gen.*, 71 F.4th 51, 55 (D.C. Cir. 2023).

However, through equitable tolling, I may extend the deadline. Equitable tolling "is reserved for situations in which the claimant 'has made a good faith error (*e.g.*, brought suit in the wrong court) or has been prevented in some extraordinary way from filing his complaint in time.'" *Lax*, 20 F.4th at 1183 (quoting *Threadgill v. Moore U.S.A., Inc.*, 269 F.3d 848, 850 (7th Cir. 2001). This is a close call, but this is an unusual circumstance. The timing of the holiday, the fact that he used Next Day Air two days before the deadline and it still did not arrive in time, and the fact that he is proceeding *pro se*, all weighs in favor chalking this up to a "good faith error" and allowing the deadline to be tolled by one business day. Because untimeliness was Schneider's only argument to dismiss the Title VII claim at the pleading stage, it will be allowed to proceed.

One final matter: Schneider moved to file a sur-surreply in response to the new arguments in Similien's surreply, which was granted by Magistrate Judge Martin. [DE 44.] Similien then moved to file a sur-sur-surreply in response to Schneider's sur-surreply. [DE 46.] The court has liberally granted extra briefing for this matter given Similien's *pro se* status but draws the line here. The motion for leave to file a sur-sur-surreply will be denied.

## II. Similien's Section 1981 Claim

Similien's second claim is that he was discriminated against based on his race in violation of the Civil Rights Act of 1866. Section 1981 guarantees all persons the same

right to "make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). To survive a motion to dismiss, a Section 1981 plaintiff must plead facts plausibly showing that race was a "but-for" cause of the adverse employment action. *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 589 U.S. 327, 341 (2020). "The legal analysis for discrimination claims under Title VII and § 1981 is identical." *Smith v. Chi. Transit Auth.*, 806 F.3d 900, 904 (7th Cir. 2015). At the motion to dismiss stage, the bar Similien must meet in stating a claim of race discrimination is low. *Saud v. DePaul Univ.*, 2019 WL 5577239, at *6 (N.D. Ill. Oct. 29, 2019) ("The Court now turns to the question whether Plaintiff stated a claim for discrimination based on his race. The bar he must meet is low.").

Schneider argues that Similien has provided *no* allegations of race discrimination at all and, further, pled facts that actively undermine his claims. Similien provided information on two other employees (Warner and Kountz) in his amended complaint, who he alleges were similarly situated employees who had similar incidents and were not fired. This difference in treatment is the basis for his claim of race discrimination, as he states: "I believe I was treated less favorably than these female co-workers because I am male and Black." [DE 7, 7.]

The problem is that both of those comparators are the same race as Similien; all three are Black. These comparators are the only allegations of race discrimination provided by Similien, so the fact that they facially do not show race discrimination, and

further actively undermine his claim, appears to be a fatal deficiency.[2] *See Johnson v. City of Chicago Bd. of Educ.*, 142 F. Supp. 3d 675, 691 (N.D. Ill. Nov. 2, 2015) ("For claims of racial discrimination, then, the proposed comparator cannot be someone of the same race."); *Poppens v. Wells Fargo Clearing Servs., LLC*, 2026 WL 809359 (N.D. Ind. Mar. 24, 2026) ("Though Mr. Poppens argues that Gerry Berg and Bryan Palonis, two other older white Wells Fargo employees, were also discriminated against based on race, Mr. Berg and Mr. Palonis cannot serve as comparators to Mr. Poppens because, like Mr. Poppens, they are both white.").

In his surreply, Similien points out that, in his affidavit attached to his complaint, he stated that while Warner is Black, she is a "Black woman of mixed-race." [DE 7-1, 83; DE 41, 6.] He argues that this puts her in a "distinct racial category from Plaintiff." [DE 41, 6.] His affidavit goes on to state that Warner has a "lighter skin complexion" than him. [DE 7-1, 83.] I am not aware of any court recognizing someone expressly identified as the same race as the plaintiff as being a proper comparator, even if that person is of a different complexion or mixed-race background, and many cases appear to challenge that conclusion. *See, e.g., Walker v. Univ. of Colorado Bd. of Regents*, 1994 WL 752651 (D. Co. Mar. 30, 1994) ("Multiracial persons may be considered members of each of the protected groups with which they have any significant identification."); *Moore v. Dolgencorp, Inc.*, 2006 WL 2701058, at *4 (W.D. Mich. Sept. 19, 2006) ("To recognize a

---

[2] Similien also alleges that Schneider deviated from its own policy by not providing him with more training after his multiple incidents leading up to his crash. [DE 34, 2-3.] However, he fails to provide any allegations in his complaint that this alleged deviation and lack of additional training was tied to his race.

legal hierarchy within the protected class of race based upon differences in the hues of skin color would create or deny legal remedies based upon sub-categories of this class that Congress has not chosen to recognize. It could also open the door to nearly insurmountable issues of proof in court regarding the actual racial heritage… not to mention difficulties for everyone in the daily application of the Civil Rights Act.”).

Further, this still leaves the other Black comparator, Kountz. Similien does not allege Kountz is of mixed race. He also specifically states Kountz has a darker complexion than Warner, but not as dark of a complexion as him. [DE 7-1 (“Ms. Kountz, another Black female with a complexion darker than Ms. Warner’s, was involved in multiple accidents… Ms. Warner has the lightest skin complexion, while Ms. Kountz, although darker than Oceanna [Warner], has a complexion that is still not as dark as mine.”)]. Similen is trying to argue that these women, who he specifically alleges are the same race as him, can serve as comparators based on gradients of their skin hue. To recognize this would make it considerably more difficult to recognize any comparator as being of the same “race,” could make defending against these claims exceedingly difficult, and would expand the meaning of “race” in the Civil Rights Act of 1866 to contain a potentially innumerable number of categories.

With these comparators, Similien is left not only with no allegations of race discrimination; he is left with allegations that actively undermine that claim, as he has provided comparators of the same race that were not terminated under similar circumstances. I recognize, as stated above, that the standard for pleading racial discrimination is very low. Generally, it “is enough for a plaintiff to allege that they

were discriminated against because of their race." *Weingardt v. Proviso Area for Exceptional Children PAEC 803*, 2026 WL 2350668, at *2 (N.D. Ill. Aug. 13, 2026). However, a case where the allegation is specifically that he was discriminated against because *other Black employees* were treated better than him is not an allegation of race discrimination at all and is one step too far even under this forgiving standard.

The Circuit has cautioned against dismissing the claims of *pro se* litigants without a proper chance to amend. *Felton v. City of Chicago*, 827 F.3d 632, 636 (7th Cir. 2016). I find that guidance especially applicable here, where the standard for stating a claim is so low. While Similien has already amended his complaint once as a matter of course, he has not been given the opportunity to do so after a substantive order of the Court. I will give Similien an opportunity to amend his complaint to include proper allegations of race discrimination. Thus, the race claim will be dismissed without prejudice with a chance to amend.

## Conclusion

For the reasons stated above, Similien's motion for leave to file a sur-sur-surreply [DE 46] is **DENIED.** Schneider's motion to dismiss [DE 22] is **GRANTED IN PART AND DENIED IN PART**. The motion to dismiss is **DENIED** as to the Title VII claim and **GRANTED IN PART** as to the racial discrimination claim.

Similien is given until **December 2, 2026**, to file an amended complaint that restates his Title VII claim and amends his racial discrimination claim. If he does not file an amended complaint by that time, this case will only proceed on the Title VII claim.

**SO ORDERED.**

ENTERED: November 2, 2026.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT